■ In the Matter of the Claim of ETHEL DOMASH, Respondent, against STANDARD COAT, APRON AND LINEN SERVICE et al., Appellants, and SPECIAL FUNDS CONSERVATION COMMITTEE, Respondent. WORKMEN'S COMPENSATION BOARD, Respondent.— Appeal by the employer and its carrier from a decision of the Workmen's Compensation Board which made an award of death benefits and discharged the Special Fund under subdivision 8 of section 15 of the Workmen's Compensation Law. The deceased employee worked as a route man on a laundry truck. He delivered and picked up such things as aprons, towels, dresses, pants and shirts. Upon returning to the plant each day he would unload the clothing which he had picked up during the day and then load his truck with the bundles to be delivered the following day. The decedent's busiest day was Thursday when he delivered to a large chemical factory. It was necessary for him to work late on Wednesdays to get his truck loaded for the next day. On Wednesday, November 14, 1951 the decedent ran his usual route of some 50 stops and after returning to the plant unloaded his truck. He was then assisted by his supervisor in the loading of his truck. The load consisted of some 65 or 70 bundles of dresses, shirts and pants weighing about 30 pounds each. The supervisor handed the bundles to the decedent in the truck who then arranged the bundles in order. The supervisor testified that on this occasion the decedent said he "felt lousy" and that he looked weak and tired, although he admitted the decedent had complained about feeling lousy on other occasions. The decedent's widow testified that when he returned home at 8:00 that evening he complained about not feeling well and went right to bed. He was found shortly thereafter in a bad condition and foaming at the mouth. Dr. Post was called to treat the decedent and he died the following day. The decedent had a serious pre-existing heart condition. He had been hospitalized in 1950 at which time a diagnosis of coronary artery disease and subendocardial infarction was made. Drs. Waldman and Seley who saw the decedent in 1950 were of the opinion that his condition was permanent and that it could have progressed to death but neither expressed an opinion as to causal relationship. On November 12, 1951 the decedent went to see Dr. Post complaining that he could not walk or breathe and of pains in his

chest. He stated that when he saw the decedent on November 14, 1951 he was paralyzed on one side which indicated a cerebral accident. He further testified that he could not with reasonable medical certainty express an opinion on causal relationship. Dr. Burstein, a specialist in cardiology, testified that the hard physical work which the decedent had performed was the cause of death and he didn't feel it made any difference whether the particular cause of death was, whether a stroke, blood pressure or heart failure. Dr. Katz, another specialist, testified that there was no causal relationship between the decedent's work and his death based principally on the interval between the exertion and death. The decedent's widow filed a claim for herself and a minor child on July 7, 1955. The widow's claim was disallowed for not complying with the time limitations of section 28. At a later hearing the Referee found causal relationship, made an award to the minor child (cf. §§ 28, 115) and held the Special Fund responsible after the first 104 weeks. The board affirmed the award but discharged the Special Fund holding that a claim for reimbursement was not filed within 104 weeks of death. The board excused the statutory notice under section 18 because the employer, through his foreman, was deemed to have had knowledge of the industrial accident. The question of whether the findings of accident and causal relationship here are supported by substantial evidence is a close one, but it would seem that it could be found that the work was arduous and involved more strain and exertion than the normal wear and tear of life. After putting in a day on his laundry route the decedent then in the process of loading his truck lifted or carried about 70 bundles weighing 30 pounds each. It could be found also, that Dr. Burstein's testimony as to causal relationship was sufficient. Whether there was sufficient medical testimony to support the award must stand or fall on his testimony, some of which would seem to liken the present case to *Matter of Burris* v. *Lewis* (2 N Y 2d 323). He stated when asked what part of the work contributed to death, " any physical exertion " and that the decedent should not have been doing that type of work at all. However, it would seem that when viewed as a whole his testimony was sufficient to support the award. He stated that death was caused by the exertion claimant put forth that particular day; that death was produced by the hard physical work involved and that the work was heavy physical work. We cannot justly say as a matter of law that the board could not find an accident and causal relationship on this record. The appellants further contend that the Special Fund should not have been discharged. Section 15 (subd. 8, par. [f]) provides that " notice or claim of the right to such reimbursement shall be filed with the board in writing prior to the final determination that the resulting disability is permanent, but in no case more than one hundred four weeks after the date of disability or death ". It is clear that a claim for reimbursement was not filed within 104 weeks of death, but the claim for compensation here was not filed until more than four years after death. The carrier argues that it was therefore impossible for it to file a claim for reimbursement within 104 weeks. However, in *Matter of Lambright* v. *St. Luke's Hosp.* (3 A D 2d 613) a similar situation was presented and the Special Fund was discharged. There the court pointed out that the employer knew of the accident and its knowledge was that of the carriers. Here the board has found that the employer had knowledge through its superintendent that decedent became ill during this loading operation on his last day at work and that he died the following day. As was said in *Lambright* (*supra*, p. 614) : " The seeming hardship imposed upon the carrier in this case must, we suppose, be regarded as the result of a risk incidental to its business, since its assured's knowledge of the accident and injury must be deemed its knowledge." Some cases indicate that there might be circumstances in which a carrier would be entitled to an

enlargement of the 104 weeks' period. This was implied in *Matter of Hengel* v. *Federici & Sons* (4 N Y 2d 176) and this court recently said in *Matter of Turner* v. *Colgate Contr.* (9 A D 2d 816) that: " There are, of course, cases where the absence of any knowledge of injury and disability would impose an unreasonable and perhaps legally invalid burden on an employer and carrier." These cases imply that the court would be willing to extend the strict time limitation of section 15 (subd. 8, par. [f]) in a proper case but we do not feel they are applicable to the facts in this record. Decision and award affirmed, with one bill of costs divided between the Workmen's Compensation Board and the Special Disability Fund, with printing disbursements to each. Bergan, P. J., Coon, Gibson and Reynolds, JJ., concur; Herlihy, J., dissents in the following memorandum. The only evidence of causal relationship on behalf of claimant was expressed by Dr. Burstein. After examining his testimony the conclusion is inescapable that it does not meet the requirements promulgated in *Matter of Burris* v. *Lewis* (2 N Y 2d 323–327).